UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>) <br>v. )<br>)<br>JAMES DEAN KUKAN, )<br>)<br>Defendant. ) | No. 4:22-cr-00102 AGF/DDN |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO REVOKE DETENTION ORDER**

The United States of America, by and through its Attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Kyle T. Bateman, Assistant United States Attorney for the District, submits this response in opposition to defendant James Dean Kukan's Motion to Revoke Detention Order (Doc. 34). As set forth more fully below, it is the Government's position that U.S. Magistrate Judge Cohen correctly found that the defendant did not rebut the presumption of detention and that the Government has proven by clear and convincing evidence that no condition or combination of conditions of release will assure the defendant's appearance or the safety of the community. Order of Detention, Doc. 32, at 4. As such, the Government respectfully recommends that the defendant's motion be denied.

1

**Relevant Background**[1]

On February 17, 2021, the defendant was charged by complaint with one count of production of child pornography in violation of Title 18, United States Code, Section 2251. Doc. 1. The complaint was supported by an affidavit submitted by Federal Bureau of Investigation (FBI), Special Agent Gregory Marx. Doc. 2.

As set forth in the Affidavit, the FBI, Washington Field Office, was conducting an online undercover investigation when, on or about February 14, 2022, Kik user "Jbo666666" joined a Kik online group focused on dad/daughter incest. Jbo666666 began communicating with an undercover employee (the "UC") in a private chat regarding the sale of hidden camera videos of Jbo666666's minor children, including ones of the minors getting in and out of the shower and going to the bathroom. In the course of these communications, Jbo666666 sent several non-pornographic, family pictures and also sent several "sample" videos of the minors, including ones that show minor victims in a lewd and lascivious display of their genitals.

Jbo666666 told the UC that he already had a few videos of his minor daughters, including ones with "good pussy," and that he was willing to record new ones every day. Jbo666666 told the UC he was only looking to sell and was not interested in trades. Jbo666666 then told the UC that he would send over all of his videos for $100. Jbo666666 asked the UC to pay him through his wife's CashApp account and requested that the UC not put anything in the subject line regarding the purpose of the payment. Law enforcement was able to identify the

---

[1] The majority of the facts stated herein can be found either on the record or in the U.S. Pretrial Services Report. Any additional facts contained herein are made by way of proffer and would be expected to be established at either an evidentiary hearing or at trial. The facts in this response are simply an outline of the United States' evidence with respect to some discrete aspects of this case, relevant to the detention determination.

2

CashApp account as belonging to the defendant's wife.

On February 16, 2022, United States Magistrate Judge Patricia L. Cohen signed a federal search warrant for KUKAN's residence.  (Ref. Case number 4:22 MJ 6046 PLC).  FBI agents and Task Force Officers executed the warrant the same day.  The defendant, his wife, and their three minor children were present at the time of the warrant execution.

The defendant was advised of his Miranda rights, signed a form acknowledging them, and agreed to be interviewed by agents.  In this interview, the defendant admitted that he had used the Kik application and stated that the application was probably installed on his phone.  The defendant further stated that he used the Kik application to talk to people in various groups, such as "St. Charles" and "St. Louis."  The defendant also stated that he used Kik to talk to girls and that he may have exchanged nude pictures with them.  The defendant denied using Kik to send or receive images of nude children.

During the execution of the search warrant, agents seized a Dell laptop computer and an Apple iPhone from the residence.  These devices were forensically examined and were found to contain approximately 234 spy cam videos depicting Victims 1, 2 and 3, including ones that depict the victims' genitals.  These videos were recorded from multiple angles in a bathroom and a bedroom.  One video depicts H.S.K. sleeping on a couch wearing underwear and a shirt and the camera zooms in on H.S.K.'s crotch.  The meta data from these videos show creation dates that range from October 17, 2021, and February 16, 2022.  In addition, the examination revealed that the devices were used to communicate with others on GroupMe, Kik, Snapchat, Telegram and WhatsApp in attempts to sell said videos.

On the Apple iPhone, which has a device name of "James's iPhone," investigators discovered the following applications installed: Kik (username Jbo666666), Telegram (username Jay See), WhatsApp, SnapChat, Venmo, Paypal, various cryptocurrency applications, and various VPN/Tor browser applications.  Investigators also discovered a video that depicts the defendant in a bedroom as he appears to be testing a camera device - in the video, the defendant sits on a bed, looks at the camera, and gives a thumbs-up.  Investigators also discovered a Telegram chat where another individual provides advice to the defendant about how to sell child exploitation videos to others.  In this communication, the other user explains to the defendant that he/she "had trouble selling 8 videos, over 30 min. Runtime total. + bonus. For $50. These were custom videos."  The device was also used to search for "spy camera at best buy" in November 2021 and also to visit websites for "nanny camera kit", "The Best Hidden Cameras", and "best spy camera on the market" in December 2021.  Investigators also discovered four apparent hidden camera videos on this device in a temporary application folder.  These videos depict females in bathrooms or changing clothes – three of the videos depict potential minor females that have not yet been identified by law enforcement.  In one video, a camera is held outside of a window while an unknown female, who appears to be a minor, enters a room and undresses.

On the Dell laptop, which has an owner of "JKukan," investigators discovered three videos that depict the defendant setting up, adjusting, and/or removing a camera device.  In one video, which is oriented to face a shower curtain in a bathroom, the defendant's face is clearly seen as he opens what appears to be a closet door and removes the camera.  In another video, the defendant's face is again clearly seen as he places and/or adjusts a camera inside the same bathroom closet. Numerous videos depicting Victims 1, 2 and 3 were also found on the device that were recorded

4

from the same location as placed by the defendant.

During the search, investigators discovered controlled substances in the basement of the residence, including methamphetamine. The defendant was placed under arrest.

On February 18, 2022, the defendant had his initial appearance on the charge in the complaint. The Government also moved for the defendant's detention pending trial. Doc. 4. The Pretrial Services Office, after interviewing the defendant and gathering information regarding his history, prepared a report that recommends the defendant's detention. PTSR, Doc. 7.

A detention hearing was held on February 18, 2022. U.S. Magistrate Judge Cohen heard arguments from the defendant as well as the Government.

On March 3, Judge Cohen found that the defendant "failed to rebut the presumption of detention and the Government proved by clear and convincing evidence that no conditions or combination of conditions will assure Defendant's appearance or the safety of the community." Order of Detention, Doc. 32 at 4.

On February 23, 2022, a federal grand jury returned an Indictment charging the defendant with three counts of production of child pornography in violation of Title 18, United States Code, Section 2251. Doc. 18. Count I involves Victim 1, Count II involves Victim 2, and Count III involves Victim 3.

On March 18, 2022, FBI special agent Marx received information from the mother of Victims 1, 2 and 3, that the defendant had made numerous attempts to contact her and her children by telephone while he was incarcerated. The victims' mother described this contact as harassment. As such, the victims' mother requested that various phone numbers be blocked so that the defendant could not reach them from the prison phone system.

The FBI thereafter reviewed calls to and from the defendant's prison phone account. Below is a summary of several pertinent calls related to the defendant's detention determination:

- In one video call between the defendant and his victims' mother, dated March 1, 2022, the defendant stated "You know that the shit that I put into my body changes the person that I am.   It's not an excuse.   It is what it is."

- In one phone call between the defendant and his victims' mother, dated March 1, 2022, the defendant stated "all these emotions turn to fucking anger because you know how I am. I don't know how else to deal with it.   And I know I brought it all on myself and it ain't nobody but me" and "Ain't nobody to blame but me."   The defendant later stated "let me rot in fucking prison I guess.   I'll be out eventually."   The defendant also stated "I'm a fucking addict that just quit cold turkey and now they got me surrounded by concrete walls with a bunch of fucking idiots. Like I'm a psychopath. Like I need a fucking psych evaluation and I need doctors and hugs. I've never needed a hug more in my fucking life. I'm walking around here just fucking crying waiting for a motherfucker to point or talk and I'm going to rip his fucking shit right off him."

- In another phone call between the defendant and his mother, dated March 15, 2022, the defendant stated "I'm coming for my shit and when I get out of here and these mother fuckers hear that I'm out, people are gonna be fucking scared.   I'm telling ya.   Like [victims' mother] thinks I'm chalked up and she's safe with me behind bars.   Well, guess what? When she catches wind that I'm on the streets she's going to shit herself.   She will shit herself."   The defendant then stated that "like if all my shit is gone and I don't have anything left, you know, you watch, well I'm gonna catch a case then because heads will be rolling off of shoulders.   I guarantee it. They know it too.   They will all be running from the farm because they will be like we got to get

6

out of here because this is the second place he's going to go."

## Legal Analysis

Due to the nature of the charged crimes, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community. 18 U.S.C. § 3142(g)(3)(E). The defendant bears a burden of production to rebut the presumption that he does not pose a danger to the community or a risk of flight. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). Even if the defendant can meet such burden, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.*; *see also United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (stating that, even where a defendant satisfies his burden of production, "[t]he presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial"). The court should take into account "the available information" concerning:

1) the nature and circumstances of the offense charged, including whether the offense …. involves a minor victim….;

2) the weight of the evidence against the person;

3) the history and characteristics of the person, including;

   (A)  the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   (B)  whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The standard for determining whether a defendant poses a risk of non-appearance is preponderance of the evidence; the standard for determining whether a defendant is a danger to the community is clear and convincing evidence. *Abad*, 350 F.3d at 796. The standard of review for revoking a detention order is *de novo*. *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985).

## Argument

The defendant argues that his criminal history is not extensive. He admits that he has a history of drug abuse, but argues that it is not extensive. He further states that his parents, who reside in Winfield, Missouri,[2] will serve as third-party custodians and will post their home as collateral to secure his release.[3] He further states that he will submit to home incarceration, will wear a location monitoring device, and will abide by a condition that prohibits contact with his wife and children.

**I.     The available information supports a finding that the defendant is a flight risk**

It is the Government's position that the defendant has not rebutted the presumption that he

---

[2] The defendant's parent's home is within 1,000 feet of Winfield High School. In addition, the defendant's brother currently resides with the defendant's parents in Winfield, Missouri. The Government notes that the defendant's brother has a prior felony conviction in 2017, including for knowingly burning or exploding (in violation of Rev. Stat. Mo. 569.055) and property damage 1st degree (in violation of Rev. Stat. Mo. 569.100). The defendant's brother also has several misdemeanor DWI convictions.

[3] The defendant also offers that he might live with his aunt in St. Ann, but it is not clear whether this aunt is willing to be a third-party custodian for the defendant.

8

is a flight risk. The available information reveals that the defendant has a history of failing to appear for his criminal cases, including in 2006 (SIS conviction for DWI in Lincoln County), 2008 (SIS conviction for possession of controlled substance in Lincoln County), and 2021 (fined $250 for operating a motor vehicle in a careless and imprudent manner, involving an accident, in O'Fallon, Missouri). On his DWI case, the defendant's probation was revoked and he was sentenced to 60 days imprisonment.

The defendant presently faces a mandatory term of imprisonment of 15 years on each of the charged counts. Such significant penalties provide a strong incentive to flee. *See United States v. Shuklin*, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020).

The defendant also has a history of drug abuse. *See United States v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) ("As a frequent drug user defendant constitutes a 'flight risk.'"). The defendant admits such history but claims that it is not extensive. The Government notes that the defendant was convicted of possession of controlled substance (marijuana) for conduct that occurred in December 2005. In addition, in 2019, the defendant was charged with possession of marijuana/synthetic cannabinoid and drug paraphernalia. Finally, during a search of the defendant's residence on February 16, 2022, law enforcement discovered methamphetamine in the basement.

Based on the foregoing, the defendant has not rebutted the presumption that he is a flight risk. Even if this Court finds that the defendant has rebutted such presumption, the factors above demonstrate by a preponderance of the evidence that the defendant is a flight risk. As such, the Government recommends that the Court find that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required.

## II. The available information supports a finding that the defendant is a danger to the community

It is the Government's position that the defendant has not rebutted the presumption that he is a danger to the community. The available information reveals that the defendant produced hundreds of hidden spy camera videos of three minor females, including ones that depict the minors in a lewd and lascivious display of their genitals; that the defendant solicited and sold such videos to others on the internet; and that the defendant offered to produce additional videos of the minor females upon request. *See Abad*, 350 F.3d at 797 ("[d]etaining adults who prey on children for the adult's sexual gratification or for the production of child pornography is…a legitimate governmental objective.").

A forensic examination of the defendant's devices also revealed child pornography that depict other presently unknown victims. In one video that was discovered on the defendant's phone, a camera is held outside of a window while an unknown female, who appears to be a minor, enters a room and undresses. Law enforcement has not yet identified this female.

The defendant has also made several apparent threats regarding his potential release on bond. Such threats appear to be directed at the mother of Victims 1, 2 and 3.

Based on the foregoing, the defendant has not rebutted the presumption that he is a danger to the community. Even if this Court finds that the defendant has rebutted such presumption, the factors above demonstrate by clear and convincing evidence that the defendant is a danger to the community. As such, the Government recommends that the Court find that there is no condition or combination of conditions that will reasonably assure the safety of the community.

## Conclusion

Based on the foregoing, this Court should deny the defendant's Motion to Revoke the Detention Order (Doc. 34). The defendant poses a risk of non-appearance and a danger to the community. There is no condition or conditions that will ameliorate either of these risks.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

 /s/ Kyle T. Bateman
KYLE T. BATEMAN, #996646(DC)
Assistant United States Attorney
111 S. 10th Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-2178
Kyle.Bateman@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2022, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

        */s/ Kyle T. Bateman*
        KYLE T. BATEMAN, #996646DC
        Assistant United States Attorney