UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 4:22-cr-102 AGF |
| | ) |
| JAMES DEAN KUKAN, | ) |
| | ) |
| Defendant. | ) |

**SENTENCING MEMORANDUM**

COMES NOW Defendant, James Kukan (Jim), by and through counsel, and files the following memorandum in support of a sentence of 15 years imprisonment with a lifetime supervised release.

Law enforcement officers knocked on Jim's door at about 6:45 p.m. on February 16, 2022, just under two years ago. They had a search warrant with them, and Jim agreed to an interview shortly after they arrived. He didn't confess. But he said enough to help the case against him. It didn't matter much anyway. The cameras, computer, and cell phone they seized held more than enough evidence to convict him.

Among crimes of his type, Jim's is atypical. He has no interest in child pornography. He'd saved none on his devices and never asked for any from the people he communicated with on social media. He tried to sell them the pictures, instead. Of course, this fact doesn't make matters any better. But it does suggest a less ordinary explanation for his crime.

Whatever the explanation, to this day Jim can't identify it. Perhaps his addictions to drugs and gambling played a role. He used methamphetamine daily in the year before his arrest and

1

habitually gambled on sports through on offshore, online service. So, he wasn't thinking clearly, and he could use the money. But Jim doesn't place the blame on his addictions, and, despite his best efforts, nothing obvious stands out to him. By his own account, he had an idyllic life: a beautiful wife; three daughters he adored; in-laws who supported him through past struggles; parents who loved him; a good job of 20 years that he enjoyed; and a home in a quiet, safe neighborhood. Jim hopes to get mental health treatment while in prison to grasp what he can't comprehend, to better understand himself, and to discover the motives underlying his behavior. He'll have plenty of time to devote to this endeavor too.

In the jargon of the guidelines, he has a total offense level of 42, the next to highest offense level the guidelines assign.[1] His criminal history category is I, the lowest criminal history category available.[2] These two variables produce a guidelines range of 360 months to life,[3] despite his plea of guilty and the absence of any serious criminality in his past.

Comparatively, it's difficult to reconcile these numbers with the guidelines generally. Had Jim committed the premeditated murder of one of his three daughters, his total offense level would drop to 40,[4] and his guidelines range would fall to 292-365 months.[5] His offense level would reduce to 35 if he had killed one of his daughters in what the law classifies as second-degree murder.[6] In that case, his guideline range would lower to 168-210 months.[7] Similarly, if

---

[1] *See* Presentence Investigation Report (PSR) at ¶ 56.

[2] *See id*. at ¶ 61.

[3] *See id*. at ¶ 91.

[4] S*ee* U.S.S.G. §2A1.1.

[5] *See* United States Sentencing Guidelines Manual, Sentencing Table.

[6] *See id*. at §2A1.2.

[7] *See id*., Sentencing Table.

he conspired with another to do away with a daughter and paid his confederate $100,000 to commit the deed, his offense level would decrease to 34,[8] and his range of punishment would shrink further still to 151-188 months.[9]

In general, the law gauges murder of any degree the most serious of all crimes and outcomes like these may explain why courts do not follow the guidelines in most cases like Jim's. In 2019, 57.2 percent of production of child pornography offenses resulted in long but below guidelines sentences.[10] The average sentence came to 275 months.[11] Relative to this average, the parties' recommended range of sentences (180-240 months) represents an approximate 33 to 23 percent reduction. An outcome at the low-end of this range (180 months) would come out just below the mid-range of what the guidelines would advise had Jim committed the second-degree murder of his youngest, middle, or oldest daughter:  188 months.[12]

These comparisons aside, there are other good reasons for the parties' recommended sentence, like the absence of several aggravating factors in Jim's case. For example, in 2019, 40 percent of production of child pornography offenders incapacitated, coerced,[13] or enticed a victim, "or misrepresented their identity…to facilitate the offense."[14] Jim did none of these

---

[8] See id. at 2A1.5.

[9] See id., Sentencing Table.

[10] See United States Sentencing Commission, Federal Sentencing of Child Pornography Production Offenses at 3 (Oct. 2021) [hereinafter Production Offenses Report]; in 2022, 59 percent of production offenses resulted in below guideline sentences for reasons other than a 5K1.1 motion, the same percentage as in 2021 and 2000. See Sourcebook of Federal Sentencing Statistics, Table 32, (2022), (2021), and (2020). In 2019, 22 percent of child pornography production defendants pled guilty to a lesser charge and did not confront a 15-year mandatory minimum penalty or the production of child pornography guideline. See Production Offenders Report at 3.

[11] See id.

[12] See U.S.S.G. § 2A1.2; see also Sentencing Table.

[13] Sextortion is the most common form of coercion followed by violence or violent threats. See Production Offenders Report at 38.

[14] Id. at 6, 37.

3

things.[15] Nor did he have sexual contact with his victims,[16] though in 2019, 80.9 percent of all cases involved sexual contact[17] and almost 90 percent of all cases involved sexual contact when, like Jim, the defendant committed the offense in the same location (rather than remotely) as a victim.[18] What's more, sometimes this contact takes the form of more than just a touch. Some offenders have sexual intercourse with their victims on multiple occasions over one or more years or have them perform sex acts on adults or other children. Other offenders physically abuse their victims. Jim has no prior sex offense convictions, either. Unsurprisingly, production offenders with contact or non-contact prior sex offense convictions, whether against a minor or adult, receive the longest sentences among all child pornography production offenders.[19]

Similarly, many of the facts that increase Jim's sentence do not distinguish his case from the ordinary. Like Jim, 83.5 percent of defendants who committed their offense in person had a victim 12 years of age or younger.[20] And more that 60.3 percent of all defendants were either related, or held a position of trust with respect, to their victims.[21] Likewise, almost half of all

---

[15] *See* PSR at ¶¶ 14-25.

[16] The undercover agent with whom Jim communicated asked Jim for a photo depicting contact. Jim responded, "no touch."

[17] *See* Production Offenses Report at 35.

[18] *See id*.; when specifically asked by an FBI undercover agent, "We're u able to move the panties to the side or touch," Jim responded, "No touch."

[19] *See id*. at 51 (in 2019 production offenders with a prior contact offense against a minor or adult received a mean sentence 334 and 330 months respectively; offenders with no prior sex offense conviction received a mean sentence of 267 months).

[20] *See id*. at 5; between 2020 and 2022, 85.8, 83.1, and 87.5 percent of offenders, respectively, received an age-based increase of between two and our levels. *See* Use of Guidelines Specific Offense Characteristics, Guideline Calculation Based, (2020), (2021) and (2022) at 41, 97 and 97.

[21] *See id*. at 4, 30.

offenses (41 percent) involved more than one victim.[22] Jim's offense involved three. But some involve far more and as many as 440.[23] Nor did Jim widely distribute the images he produced. He sent one to an undercover officer. But he does not seem to have sent them to others, and no one appears to have taken up his offer to buy the pictures he produced. Consequently, unlike some victims, Jim's daughters will not have to live with the knowledge that their images will circulate in perpetuity on the internet.

No less important, Jim will serve a very long sentence. With credit for time served, maximum good time, and a six-month stay in a halfway house, he'll serve between 11 and 16 years more in prison if this Court imposes a sentence within the range recommended by the parties.[24] Jim is 38 at the moment. By then he'll be between 49 and 54 with no college education, only manual labor related work experience, no savings, his best earning years behind him, and a federal sex offense conviction that will sharply limit his prospects. He'll have to register for life as sex offender, as well, and contend with a lifetime of significant conditions of supervised release with little family to lean on for support. Jim has one brother with whom he's relatively close. But his brother is in no position to support him, and neither are his parents who will be in their mid to late 70s when Jim' released from prison. By then, Jim's three daughters will range in age from 29 to 33, 24 to 29, and 19 to 24, respectively, and who knows if they'll ever reconcile with their father. Either way, for the years he's imprisoned, the uncertainty will wear away at Jim who hopes very much to reestablish some sort of connection with his family, though he knows his family may never feel the same way. In short, Jim will have a painful future to navigate with

---

[22] *See id*. at 4, 27.

[23] *See id*. at 27

[24] Sex offenders are a spurned constituency and are ineligible for time credits under the Residential Drug Abuse Program, the First Step Act, or any other policy or legislation.

obstacles everywhere to overcome for the duration of his life, which seems like punishment enough when added to a 15-year stint in prison for someone who has never served a prior sentence before.

    For the foregoing reasons, James Kukan respectfully requests this Court impose a sentence of 15 years imprisonment with lifetime supervised release.

Respectfully submitted,

By:   */s/ ADAM FEIN*

Adam Fein, MO #52255
Attorney for Defendant
120 S. Central Avenue, #130
Clayton, MO 63105
(314) 862-4332
afein@rsfjlaw.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on January 4, 2024, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Mr. Kyle Bateman, Assistant United States Attorney.